UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

OFFICE AND PROFESSIONAL,           )
EMPLOYEES INTERNATIONAL            )
UNION, AFL-CIO, LOCAL 2001,        )
                                   )
              Plaintiff,           )
                                   )
v.                                 )         No.:   3:05-CV-565
                                   )                (VARLAN/GUYTON)
TENNESSEE VALLEY AUTHORITY,        )
                                   )
              Defendant.           )

## MEMORANDUM AND ORDER

Plaintiff, the Office and Professional Employees International Union ("OPEIU"), filed

this lawsuit seeking to compel defendant, Tennessee Valley Authority ("TVA"), to comply

with an arbitration award issued on June 15, 2005 ordering TVA to reinstate a $500 flex

benefit credit owed to each of OPEIU's constituents. [*See* Doc. 1.] This civil action is before

the Court on the parties' cross motions for summary judgment. In TVA's motion for

summary judgment [Doc. 7], it argues that it is entitled to entry of judgment in its favor on

the grounds that it has already fully complied with the arbitration award insofar as the award

is unambiguous in its requirement that TVA pay OPEIU the credit benefit for 2005 only. In

OPEIU's motion for summary judgment [Doc. 10], however, it argues that the arbitration

award is clear in its requirement that TVA continue to pay the credit benefit until September

2009.

The Court has carefully considered the pending motions, supporting briefs [Docs. 9, 11], and response and reply briefs [Docs. 15, 16, 20] in light of the applicable law. For the reasons set forth herein, TVA's motion for summary judgment will be denied, OPEIU's motion for summary judgment will be denied, and the case will be remanded to the Arbitration Panel for clarification.

## I.     Relevant Facts

OPEIU is a bargaining representative for approximately 800 clerical and administrative employees of TVA and the two entities have been parties to a labor agreement since July 1998. [Doc. 9 at 2; Doc. 11 at 2.] The parties' labor agreement consists, among other parts, of a Collective Bargaining Agreement, a series of Supplementary Agreements, and a number of Memorandums of Understanding ("MOU"). [Doc. 9 at 2; Doc. 11 at 2.] The parties' briefs in support of their respective motions for summary judgment set forth many of the intricacies of the labor agreement as well as their negotiation history of that agreement, and the Court will highlight those details that are pertinent to the resolution of the pending motions.

This lawsuit primarily involves a MOU entered into by the parties in 2001 in which TVA agreed to provide an enhanced benefit package to OPEIU's constituents. [Doc. 9 at 4; Doc. 11 at 4.] Included as a part of that benefit package was an annual $500 flex benefit credit to be paid to each employee represented by OPEIU which "could be used to offset the cost of certain employment benefits for which payroll deduction could be made, such as

medical, dental or life insurance." [Doc. 9 at 4.] The MOU provided that the entire enhanced

benefit package would remain in effect for the remainder of the Supplementary Agreements

as provided in Article IV of the Collective Bargaining Agreement. [Doc. 9 at 4; Doc. 11 at

6.] Article IV:B of the Collective Bargaining Agreement provides the following:

> The Supplementary Agreements become fully binding upon TVA, the OPEIU, and the employees, individually and collectively, when signed by the representatives of these organizations and shall continue in full force and effect through September 30, 2000, and shall automatically renew for successive three-year periods thereafter unless TVA or OPEIU gives written notice of its desire to modify the Supplementary Agreements by March 1, 2000, or by March 1 of any successive year in a renewal period.

[Doc. 9 at 3; Doc. 11 at 2.]

On January 24, 2003, OPEIU gave notice of its desire to modify the Supplementary

Agreements. [Doc. 9 at 3.] This ultimately led to a dispute between the parties as to the

resulting expiration date of those Agreements and, in turn, the enhanced benefit package

MOU: TVA was of the opinion that the written notice from OPEIU resulted in the

Supplementary Agreements and enhanced benefit MOU expiring on September 30, 2004, [*id.*

at 4], while OPEIU was of the view that those agreements would only expire upon the

termination of the Collective Bargaining Agreement [Doc. 11 at 6] As a result, OPEIU filed

a grievance that was referred to arbitration by parties and is currently pending resolution

before that arbitration panel. [Doc. 9 at 4; Doc. 11 at 6-7.]

Subsequently, in the fall of 2004, the parties met to conduct their annual re-negotiation

of employee compensation. [Doc. 9 at 4; Doc. 11 at 7.] At this meeting, the parties also

conducted negotiations regarding the continuance of the $500 flex credit benefit piece of the

3

enhanced benefit MOU, with TVA proposing to eliminate the benefit credit and replace it with a different program and OPEIU proposing that the benefit credit be extended for another five years, until September 2009. [Doc. 1 at ¶ 8; Doc. 9 at 5; Doc. 11 at 8.] The parties were ultimately unable to reach an agreement on the issue and therefore chose to submit it to a three-member Arbitration Panel for decision. [Doc. 9 at 6; Doc. 11 at 8.] Pursuant to Article IV:E of the Collective Bargaining Agreement, which provides for separate dispute resolution procedures for monetary issues versus non-monetary issues, [Doc. 9 at 5], this Arbitration Panel was given jurisdiction only over the monetary issues in dispute. [*Id.* at 6.] This meant that the Arbitration Panel was not authorized to decide the above-mentioned issue of the dispute over the expiration of the Supplementary Agreements and the enhanced benefit MOU. [*Id.* at 7.]

The Arbitration Panel conducted a 4-day hearing beginning on January 31, 2005 in Knoxville, Tennessee and issued its decision on June 15, 2005. [Doc.9 at 8; Doc. 11 at 8.] In pertinent part, that decision states that the issue before the Panel "deals with the continuance (or discontinuance) of the $500 benefit credit in 2005." [Doc. 9 at 8; Doc. 11 at 9.] As to that issue, the Arbitration Panel found for OPEIU, stating that it "instructs TVA to reinstate the $500 benefit credit." [Doc. 11 at 10.] In making that determination, the Arbitration Panel also noted that the collateral dispute over the expiration of the Supplementary Agreements and enhanced benefit MOU was one that "presents a problem for the panel" in that it resulted in their being unable "to fully consider all major arguments of both parties on each disputed issue" as they were "effectively barred from considering

what might very well be the union's most viable argument, since the validity of that argument is being tested in a separate venue." [*Id.*] The decision did not otherwise articulate anything with regards to the intended duration of TVA's payment of the credit benefit.

As a result of the Arbitration Panel's award, TVA paid the benefit credit in 2005, but ceased payment after January 2005. [Doc. 9 at 8; Doc. 11 at 10.] TVA contends that the Arbitration Panel's framing of the issue before them as being "the continuance (or discontinuance) of the $500 credit benefit in 2005" and therefore confined their responsibility for payment of the credit benefit to 2005. [Doc. 9 at 9.] Accordingly, TVA argues that it "has done all that was required by the Arbitration Decision." [*Id.* at 10.] OPEIU, on the other hand, contends that the Arbitration Panel's award requires TVA to continue to pay the benefit credit through 2009. [Doc. 1 at ¶ 14.] As a result of TVA's cessation of payment of the credit benefit after January 2005, OPEIU filed suit in this Court seeking an order requiring TVA to continue payment of the benefit credit. [*Id.* at ¶ 15.]

## II.    Analysis

As noted above, this dispute centers on the question of the duration of the Arbitration Panel's award ordering TVA to reinstate the credit benefit. Specifically, the parties disagree over whether the payment of the credit benefit was confined to 2005 or instead, must be paid by TVA through 2009. TVA argues that it is entitled to judgment because it has fully complied with the Arbitration Panel's unambiguous decision to reinstate the credit benefit for 2005 only. [Doc. 9 at 10-11.] Alternatively, TVA argues that OPEIU is essentially

attempting to have this Court modify the Arbitration Panel's award by interpreting it as continuing past 2005, but is precluded from doing so by Tennessee's 90-day statute of limitations for vacating arbitration awards. [*Id.* at 13-14.] OPEIU maintains that the award is unambiguous in its favor in that it is clearly not intended to be limited to payment only in 2005 because the Arbitration Panel's "final order instructing TVA to 'reinstate the $500 flex benefit credit' did not contain the limiting term 'in 2005.'" [Doc. 11 at 15.] In the alternative, OPEIU argues that if any ambiguity exists, the Court should either construe such ambiguity against TVA, [*id.* at 16-17], or remand the award to the Arbitration Panel for clarification of the issue. [Doc. 15 at 8-9.]

As the Supreme Court has long held, "courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misrepresentation of the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). The Sixth Circuit accords similar deference to the decisions of arbitration panels, noting that "a court's review of an arbitrator's decision is a very narrow; 'one of the narrowest standards of judicial review in all of American Jurisprudence.'" *Int'l Ass'n of Mach. and Aerospace Workers v. TVA*, 155 F.3d 767, 771 (6th Cir. 1998) (quoting *Lattimer-Stevens v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990)). For example, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers*, 484 U.S. at 38.

Thus, while district courts have jurisdiction to enforce arbitration awards, they must approach such issues gingerly, because they "'have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument that will support the claim.'" *United Paperworkers*, 484 U.S. at 37 (quoting *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960)); *see also Mich. Family Res., Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 750 (6th Cir. 2007). The latter, however, is precisely what the parties are requesting the Court do in this instance – namely, to interpret the language of the Arbitration Panel's decision as it pertains to the duration of payment of the credit benefit in a way most favorable to their particular cause. In this way, it strikes the Court that there is uncertainty and ambiguity in the Arbitration Panel's decision as to its duration precisely because it is subject to the two divergent yet reasonable interpretations espoused by TVA and OPEIU.

After carefully reviewing the Arbitration Panel's opinion and decision, the Court finds that it is unclear what the award's temporal scope is intended to be. As OPEIU notes "'[t]he 'in 2005' language upon which TVA's interpretation depends appears only once, in the Arbitration Panel's statement," but was not referred to in the Arbitration Panel's ultimate decision. [Doc. 15 at 8.] That said, the Court cannot ignore the fact that the Arbitration Panel chose to use such limiting language in setting forth the very question it was to resolve, stating plainly that "this issue deals with the continuance (or discontinuance) of the $500 benefit credit in 2005." [Doc. 11 at 9.] In light of this ambiguous language and the resulting dueling interpretations of the Arbitration Panel award's scope, it is not possible for the Court to state

with certainty how long TVA was required to pay the credit benefit. *See United Steel Workers of Am. v. New Idea Farm Equip.*, 917 F.2d 964, 969 (6th Cir. 1990). To do so would require the Court to guess as to the intended duration of the Arbitration Panel's award, and such "guesswork" has been deemed by the Sixth Circuit as being "inconsistent not only with federal policy, but also with the parties' own agreement to submit their dispute to arbitration." *M & C Corp. v. Erwin Behr GMBH & Co.*, 326 F.3d 772, 782 (6th Cir. 2003). Thus, the Court would be impermissibly exceeding its authority if it were to determine the temporal scope of the credit benefit when it is unclear from the language of the Arbitration Panel's decision whether it intended to do so. *See Cleveland Paper Handlers v. E.W. Scripps Co.*, 681 F.2d 457, 460 (6th Cir. 1982) (finding that the district court "exceeded its authority by departing from the arbitrator's general language to pick the date from which damages must be measured").

In the face of ambiguous arbitral awards such at that presented in this case, the Sixth Circuit has repeatedly asserted that "a court 'is not required to enforce an award that is not clear as to its meaning and effect.'" *New Idea Farm*, 917 F.2d 964, 968 (quoting *United Steelworkers v. Timken Roller Bearing Co.*, 324 F.2d 738, 740 (6th Cir. 1963)). Instead, "[c]ourts usually remand to the original arbitrator for clarification of an ambiguous award...when the award is susceptible to more than one interpretation." *Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000). Not only does remand of the arbitral award support "the strong federal policy favoring arbitration," *M & C Corp.,* 326 F.3d at 782 (internal citations removed), but it seems particularly appropriate in this instance given how readily

the Arbitration Panel could shed light on this matter. As was the case in *New Idea Farm*, here, the Arbitration Panel "can easily clarify this issue, and then the court will know precisely what we are being asked to confirm and enforce." 917 F.2d at 969. Therefore, given the historic deference shown to decisions of arbitration panels and the federal policy favoring the remand of ambiguous arbitral awards, the Court will remand the case to the Arbitration Panel for the limited purpose of providing clarification on the issue of the intended duration of the reinstatement of the credit benefit owed to the OPEIU constituents.

## III.    Conclusion

For the reasons set forth herein, TVA's Motion for Summary Judgment [Doc. 7] is hereby **DENIED**, OPEIU's Cross-Motion for Summary Judgment [Doc. 10] is hereby **DENIED**, and this case shall be remanded to the Arbitration Panel that made the original award decision for the limited purpose of providing clarification on the issue of the duration of the reinstatement of the $500 flex credit benefit.

IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE